STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2024 CA 0447

SHERRY K. LUCAS

VERSUS

JEREMY P. LANDRY

Judgment Rendered: **JAN 1 3 2024**

* * * * *

ON APPEAL FROM THE
SEVENTEENTH JUDICIAL DISTRICT COURT, DIVISION D
LAFOURCHE PARISH, STATE OF LOUISIANA
DOCKET NUMBER 148,938

HONORABLE CHRISTOPHER J. BOUDREAUX, JUDGE PRESIDING

* * * * *

| | |
|---|---|
| Camille Saltz Babin<br>Houma, Louisiana | Attorney for Defendant-Appellant<br>Jeremy P. Landry |
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Attorneys for Plaintiff-Appellee<br>Sherry K. Lucas |

**BEFORE:  PENZATO, GREENE, AND CALLOWAY,[1] JJ.**

---

[1] Hon. Curtis A. Calloway, serving as judge *pro tempore* of the Court of Appeal, First Circuit, by special appointment of the Louisiana Supreme Court.

**GREENE, J.**

In this case, the trial court granted an Order of Protection in favor of Sherry K. Lucas and against Jeremy P. Landry, ordering, among other relief, that Mr. Landry not abuse, harass, assault, stalk, follow, track, monitor, or threaten Mrs. Lucas in any manner whatsoever. Mr. Landry appeals the adverse judgment. After review, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Stephen and Sherry Lucas live on Sugarfield Drive in Thibodaux, Louisiana. Jeremy and Jamie Landry and their two daughters live at the end of Sugarfield Drive on a cul de sac. It is undisputed that the Lucases and the Landrys have had an acrimonious relationship for several years.

On December 1, 2023, Mrs. Lucas filed a Petition for Protection from Stalking against Mr. Landry.[2] In an addendum attached to the petition, Mrs. Lucas alleged Mr. Landry had engaged in a "nearly 8-year terror campaign" against her and her husband. She referenced alleged acts by Mr. Landry that she had apparently brought up at a prior protective order hearing; alleged acts by Mr. Landry between October 6 and 17, 2023; alleged acts by Mr. Landry on November 29 and 30, 2023; and a list of alleged "past incidents" by Mr. Landry occurring over "the last nearly 8 years," but with no specifically referenced dates or specific facts.

Also on December 1, 2023, Jamie Landry, Mr. Landry's wife, filed a Petition for Protection from Stalking, on behalf of herself and her two minor daughters, against Stephen Lucas, Mrs. Lucas's husband. The trial court consolidated the two matters for hearing, and held the hearing on December 27, 2023, at which it heard testimony and accepted evidence as to both petitions. At the end of the hearing, the trial court issued protective orders against both Mr. Landry and Mr. Lucas. In a related appeal, this Court recently affirmed the protective order against Mr. Lucas and in favor of Mrs. Landry and her two minor children. *Landry v. Lucas*, 2024-0448 (La. App. 1 Cir. 11/22/24), ___ So.3d ___, 2024 WL 4863403.

---

[2] Mrs. Lucas designated her December 1, 2023 petition as a "Supplemental and Amending Petition." At a December 27, 2023 hearing, she explained that, when drafting the petition, she had simply added to a prior "October 6th" petition she had filed, but which the trial court had denied. At the December 27, 2023 hearing, the trial court interpreted the December 1, 2023 petition as a new petition and stated it was "just looking at what's happened since the last hearing."

In the instant appeal, Mr. Landry challenges the trial court's December 27th Order of Protection against him and in favor of Mrs. Lucas. Mr. Landry contends the trial court erred by issuing the Order of Protection against him, because Mrs. Lucas failed to prove that he committed acts that satisfy the definition of "stalking" as set forth in La. R.S. 46:2172 and La. R.S. 14:40.2.[3]

## APPLICABLE LAW

The legislature enacted the Protection from Stalking Act, La. R.S. 46:2171, *et seq.*, to provide victims of stalking a civil remedy for immediate and easily accessible protection against perpetrators. *See* La. R.S. 46:2171. Under the Act, "stalking" includes any act that would constitute the crime of stalking under La. R.S. 14:40.2. La. R.S. 46:2172.

Louisiana Revised Statutes 14:40.2(A) defines stalking as follows:

> Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

Louisiana Revised Statutes 14:40.2(C)(1) defines "harassing" as follows:

> "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.

Stalking cannot consist of a single incident; the behavior, by statutory definition as shown above, must be "repeated." *See State v. Conklin*, 2018-0718 (La. App. 1 Cir. 2/28/19), 274 So.3d 675, 681, *writ denied*, 2019-00665 (La. 10/8/19), 280 So.3d 591 (noting that stalking requires "recurring or renewed" behavior). *See also Watson v. Banguel*, 2022-01678 (La. 1/25/23), 353 So.3d 717 (*per curiam*).

At a hearing to obtain a protective order, the petitioner must prove the allegations by a preponderance of the evidence. *Raymond v. Lasserre*, 2022-0793 (La. App. 1 Cir. 3/6/23), 368 So.3d 82, 88, *writ denied*, 2023-00893 (La. 10/31/23), 372 So.3d 335. A

---

[3] Mr. Landry also assigns error to the trial court's failure to assign expiration dates to certain orders contained in the Order of Protection. Because we reverse the Order of Protection, we pretermit this assignment of error.

petitioner meets this burden by introducing evidence, direct and circumstantial, that shows the facts sought to be proved are more probable than not. *Id.* Further, this Court cannot reverse a trial court's decision to issue or deny a protective order absent an abuse of discretion. *Id.*

## DISCUSSION

We now determine whether Mrs. Lucas proved the allegations of her Petition for Protection from Stalking against Mr. Landry by a preponderance of the evidence, providing a reasonable factual basis for the trial court's conclusion that Mr. Landry's acts constituted stalking, and whether the trial court correctly exercised its discretion in issuing the Order of Protection against Mr. Landry.

At the December 27, 2023 protective order hearing, Mrs. Lucas testified and began by stating that she and Mr. Lucas had been "enduring eight years of attacks by Mr. Landry." The trial court instructed her to limit her testimony to acts by Mr. Landry that had occurred since a previous hearing.[4] Mrs. Lucas then testified that, on November 29, 2023, Mr. Lucas drove to a carwash and, upon his return to the neighborhood, she saw the "Landry Tahoe" following him.[5] She did not identify Mr. Landry as the driver of the Tahoe.[6] She then described an incident that occurred the next day, November 30, 2023. She stated that, on Mr. Lucas's return home from the grocery store, he called to tell her that the Landry Tahoe had pulled out in front of him and was in front of him on his route home. She went outside and saw the Tahoe make a "long, lingering stop" at the stop sign in front of their residence and then continue on. Mr. Lucas then parked his vehicle at their residence and they unloaded the groceries. According to Mrs. Lucas, approximately 30 minutes later, she and Mr. Lucas were in their garage, when Mr. Landry came "tearing around the corner," stopped his truck in front of their house, got out, and started screaming at Mr. Lucas that he was going to kill him, and then pointed at her and said that she was next. She then testified that sheriff's deputies arrived, physically

---

[4] Notably, the current record contains no transcript from a prior hearing nor any evidence that may have been introduced then.

[5] The Tahoe was identifiable as belonging to the Landrys because it had a personalized license plate.

[6] The Tahoe side windows were tinted and apparently its occupants at any given time were not easily identifiable from the outside.

4

restrained Mr. Landry, and put him in the back of their patrol vehicle. In connection with her testimony, Mrs. Lucas introduced video footage (without audio) from her home security camera showing Mr. Landry's acts and subsequent restraint by the deputies.

Mrs. Lucas also testified that Mr. Landry had directed violent behavior at her and Mr. Lucas "multiple times" over the last eight years, and she did not feel safe when Mr. Landry was around. She testified that Mr. Landry had been twice charged with disturbing the peace in events related to her and Mr. Lucas and that they had more than two dozen police reports against Mr. Landry. She did not specify the dates of the disturbing the peace incidents and admitted that none of the police reports were recent, because Mr. Lucas had been out of town for 35 days prior to November 29, 2023. She also testified that, in January 2021, she had a stroke due to the stress Mr. Landry was causing her and that she had been in therapy for two years.[7] Although providing no dates, she stated that Mr. Landry had followed both her and Mr. Lucas, had keyed both of their vehicles, and had thrown a rock from a moving vehicle that smashed Mr. Lucas's windshield.

Mr. Lucas also testified at the December 27th hearing. He confirmed that, on November 29, 2023, the Landry Tahoe followed him on his return home from the carwash, but he admitted that he did not know who was driving the Tahoe at the time and that the occupant(s) did nothing that he considered harassment, such as following too close, horn blowing, or gesturing. He also confirmed that, on November 30, 2023, he followed the Landry Tahoe on his return home from the grocery store, but he did not know who was driving the Tahoe on that day either. He also corroborated Mrs. Lucas's testimony regarding Mr. Landry later stopping in front of their house, getting out of his truck, screaming that he would kill Mr. Lucas, telling Mrs. Lucas that she was next, and then being restrained by sheriff's deputies. He also explained that the deputies later told him that Mr. Landry was the person who summoned them to the scene. During his testimony, Mr. Lucas also referenced past alleged acts by Mr. Landry, such as falsely reporting Mr. Lucas to law enforcement for acts Mr. Lucas did not commit, attempts by

---

[7] The trial court declined Mrs. Lucas's offer to provide the court with copies of letters from two of her physicians describing her medical issues.

5

Mr. Landry to hit Mr. Lucas with the Tahoe, and screaming at Mr. Lucas after being charged with disturbing the peace.

G.L., Mr. Landry's 17-year-old daughter, and Mrs. Landry, his wife, also testified at the December 27th hearing.[8] Pertinently, G.L. testified that she was driving the Tahoe on November 30, 2023, when Mr. Lucas was behind her, and she got scared and called her father. Mrs. Landry's testimony related to her stalking claim against Mr. Lucas., not Mrs. Lucas's claim against Mr. Landry.

After the presentation of evidence, the trial court stated that it was going to issue protective orders against both Mr. Lucas and Mr. Landry, because the "feud" between these two grown men had overflown and now affected their families. As to Mr. Landry, the trial court stated that a protective order was warranted, because Mr. Landry had "clearly … attempted to take the law into his own hands" (by threatening the Lucases on November 30, 2023), because he thought Mr. Lucas was stalking G.L. As to both men, the trial court found that there had been repeated action by both directed to "the others – individuals and families."

After review, we conclude Mrs. Lucas failed to carry her burden of proving a repeated pattern of conduct by Mr. Landry so as to satisfy the statutory definitions of "stalking" and/or "harassing" as set forth in La. R.S. 14:40.2(A) and 14:40.2(C)(1). Clearly, Mr. Landry's November 30th act of threatening to kill Mr. Lucas and telling Mrs. Lucas that she was "next" constituted behavior that would "cause a reasonable person to feel alarmed or to suffer emotional distress." See La. R.S. 14:40.2(A). However, the Landry Tahoe's following of Mr. Lucas on November 29th does not constitute evidence of stalking by Mr. Landry, because there is no evidence that Mr. Landry was driving or occupying the Tahoe on that day, much less that any occupant of the Tahoe was harassing Mr. Lucas. Regarding Mr. and Mrs. Lucas's testimony of other past acts by Mr. Landry, we note that, other than vague allegations to "eight years of attacks," neither Mr. or Mrs. Landry provided specific dates to establish a frame of reference for a pattern of "repeated" conduct by Mr. Landry. Thus, Mr. Landry's November 30, 2023 threatening

---

[8] Mr. Landry's daughter, G.L., was 17 years old when Mrs. Lucas requested the protective order; we will refer to her by her initials. See La. R.S. 46:1844(W).

act is the only act Mrs. Lucas proved by a preponderance of the evidence at the December 27th hearing. As earlier noted, "stalking" cannot consist of a single incident, because La. R.S. 14:40.2 requires that the behavior be "repeated."

We acknowledge that the trial court was familiar with the ongoing feud between Mr. Landry and Mr. Lucas and had apparently heard testimony and had received specific evidence at past hearings regarding Mr. Landry's past behavior. However, our review is limited to the record before us, which consists of evidence adduced at the December 27th hearing. *See* La. C.C.P. art. 2164 (providing that an appellate court's judgment is limited to "the record on appeal"). That evidence contains no such specific proof regarding Mr. Landry's past behavior.

Thus, we conclude the trial court abused its discretion in issuing the December 27, 2023 Order of Protection in favor of Mrs. Lucas and against Mr. Landry based solely on the November 30, 2023 incident.

## CONCLUSION

For the foregoing reasons, we reverse the December 27, 2023 Order of Protection. We assess costs of this appeal to Sherry K. Lucas.

**REVERSED**.